Maria Elena GRANDELLI, Appellant

v.

METHODIST HOSPITAL, Partners in Women's Health, Jack Jenofsky, M.D., Joseph Talvacchia, D.O., Appellees.

Superior Court of Pennsylvania.

Submitted Jan. 29, 2001.
Filed May 21, 2001.

Dean J. Buono, Marlton, NJ, for appellant.

David M. Schwadron, Philadelphia, for Doe, Jenofsky, Talvacchia and Partners in Women's Health, appellees.

Donald N. Camhi, Philadelphia, for Methodist Hosp., appellee.

Before: JOHNSON, HUDOCK, and KELLY, JJ.

KELLY, J.

¶ 1 Appellant, Maria Elena Grandelli, asks us to review the orders of the Philadelphia County Court of Common Pleas, which granted summary judgment in favor of Appellees, Methodist Hospital, Partners in Women's Health, Jack Jenofsky, M.D., and Joseph Talvacchia, D.O.; and dismissed Appellant's medical malpractice case with prejudice. Appellant also challenges another order of the same court,

which denied her Petition for Extraordinary Relief from the deadlines set forth in the Case Management Order of the Philadelphia County case management program. We hold that the trial court properly granted summary judgment in favor of Appellees due to a substantive deficiency of proof in Appellant's cause of action. Accordingly, we affirm.

¶ 2 The trial court opinion sets forth the relevant facts and procedural history of this case as follows:

This medical malpractice case commenced on November 12, 1997 with the filing of a Praecipe to Issue a Writ of Summons. The Complaint was filed on December 3, 1997.[2] This case proceeded in accordance with the Case Management Order of June 29, 1998 until this Court heard argument on and granted Appellees' Motions for Summary Judgment. The grant of those motions disposed of the case in its entirety.

Appellant is currently represented by Attorney Dean Buono of Parker, McCay & Criscuolo, P.A. Although a Petition for Extraordinary Relief, as well as replies to the instant motions were filed by Attorney Buono, to date, Counsel has not entered his appearance in this case. Attorney, Joseph Marrone, Jr. is the attorney of record. Attorney Buono has represented to this Court that he was formerly employed by the law offices of Joseph Marrone, Jr. until some point within the first quarter of 1999. While employed with the Marrone Law Firm, Attorney Buono handled this case until it was transferred to another of his colleagues at the firm in the latter part of 1998. After the transfer was made, Attorney Buono had no further contact with the Appellant or her case until she contacted him on September 16, 1999 [at the law firm with which he is currently associated].[3]

According to the certification of Attorney Buono, dated October 27, 1999, Appellant contacted him in September to request that he assume responsibility for her case. Appellant complained that she had no contact with the Marrone Law Firm since Attorney Buono left the firm. Attorney Buono's certification indicates that the Marrone Law Firm and an "individual attorney by the name of 'Gamberg'" were handling the Appellant's case. It is unclear what relationship Attorney Gamberg had with the Marrone Law Firm. At that time, Appellant informed Attorney Buono that her phone calls, letters and visits to the Marrone Law Firm had gone unanswered. At Appellant's request, Attorney Buono contacted Attorney Gamberg and learned that no action had been taken by him on behalf of Appellant. At this point, Attorney Buono agreed to assume responsibility for the case and instructed the Appellant to retrieve her file from Attorney Marrone.[4] The file

---

2. The gravamen of Appellant's complaint is that Appellees allegedly performed an incomplete therapeutic abortion by dilation and evacuation on August 24, 1995 at Methodist Hospital in Philadelphia. Specifically, Appellant claims that Appellees failed to abort or aborted only one of two fetuses during the initial procedure. As a result, Appellant alleges she continued to be pregnant for more than two additional months and was required to undergo a second abortion. Appellant also alleges she suffered permanent injury as a result of Appellees' negligence, negligent in-

fliction of emotional distress, and intentional infliction of emotional distress. Appellant also made a claim for punitive damages. By order dated July 23, 1998, Counts V and VI pertaining to intentional infliction of emotional distress and punitive damages respectively were stricken from the Complaint with prejudice.

3. Nevertheless, Attorney Buono's name appears throughout the record.

was provided to Attorney Buono on September 17, 1999.

4 Appellant was turned away from the office of Attorney Marrone and instructed to contact Attorney Gamberg, who supplied her with the file on or about September 17, 1999.

Attorney Buono represents that after obtaining the file, he received a facsimile from Attorney Gamberg on September 17, 1999, advising him of an Order of this Court[4] which had been issued on September 8, 1999.[5] Attorney Buono claims that he immediately contacted Attorney Marc Schwadron, Appellees' counsel, to arrange for the deposition and that he received assurance from Attorney Schwadron that no further action would be taken on the September 8th Order.[6] On October 5, 1999, Attorney Buono provided Attorney Schwadron with available dates for deposition in October and November, 1999, and asked for a reply by October 12, 1999. The Motions for Summary Judgment were filed October 12, 1999.

5 On September 8, 1999, this Court issued an Order based upon a discovery motion, requiring the Appellant to present herself for an oral deposition, answer supplemental interrogatories and supplemental responses to supplemental requests for the production of documents. The Order, the

4. The complete text of the order is as follows:

**AND NOW**, this **8th** day of **September, 1999**, upon consideration of the Discovery Motion of Moving Defendants and any response thereto it is hereby, **ORDERED AND DECREED** that within **ten (10)** days of the date of this order:

1. Plaintiff will be present for deposition upon oral examination at the offices of Counsel for Moving Defendants; and

2. Plaintiff will provide Answers to the Supplemental Interrogatories of Moving Defendants and Responses to the Supplemental Requests for Production of Documents of Moving Defendants; *or* **upon motion**

existence of which was docketed on September 8, 1999, stated further that should [Appellant] not comply, "[Appellant] shall be precluded from presenting evidence/testimony on her behalf at trial" upon motion of the [Appellees]....

6 In support of this contention, Attorney Buono presented a letter from Attorney Schwadron dated September 15, 1999, faxed September 17, 1999. The letter stated, *inter alia*, "Pursuant to the terms of [the September 8th Order], [Appellant] is to present herself for deposition by September 18, 1999. Failure to do so will result in her preclusion at trial. To that regard, please contact me no later than September 18, 1999 with dates for the deposition of your client." (Emphasis added.) Further, in support of this contention, Attorney Buono presented a letter from Attorney Schwadron dated September 27, 1999 in which Attorney Schwadron provided two available dates in September for the deposition, requested available dates from Attorney Buono and indicated that because Attorney Buono contacted him prior to September 18, 1999 he would hold the Motion for Summary Judgment in abeyance for an unspecified period of time pending confirmation of [Appellant's] deposition.

The Motions for Summary Judgment were based ... on the Appellant's failure ... to obtain and present an expert report and/or *curriculum vitae*, in accordance with the Case Management Order of June 29, 1998.[5] It is upon receipt of the Motion for Summary Judgment on or about October 12, 1999

3. Plaintiff shall be precluded from presenting evidence/testimony on her behalf at trial.

5. The June 29th case management order listed the case on the complex track. According to that order, discovery was to be completed "not later than 07–SEP–99." Appellant was required to identify and submit the *curriculum vitae* and reports of all experts intended to testify at trial "not later than 04–OCT–99." Appellees were required to identify and submit curriculum vitae and expert reports "not later than 01–NOV–99." All pretrial motions were also due to be filed "not later than 01–NOV–99." The case was expected to be ready for trial on March 6, 2000. (*See* Docket Entry, dated June 29, 1998; R.R. at 9a–10a.)

that Attorney Dean Buono acknowledges the deadlines contained in the Case Management Order.

When responding to the Motion for Summary Judgment, Appellant simultaneously filed a Petition for Extraordinary Relief requesting a six-month extension of the Court deadlines. Appellant's Petition for Extraordinary Relief was denied as Moot when this Court simultaneously granted the Appellees' Motions for Summary Judgment. This Appeal followed.

(Trial Court Opinion, dated August 31, 2000, at 1–4).

¶ 3 To this rendition we add that Appellees' *motion to compel Appellant's deposition* also included a motion to compel Appellant's responses to supplementary discovery served on Appellant's counsel months earlier. The court's order of September 8, 1999 compelled Appellant to present herself for deposition **and** to provide responses to the supplemental discovery within ten days of the date of the order or September 18, 1999. By the date of the court's enforcement order of September 8th, the deadline for discovery of September 7th had already passed. (*See* Case Management Order, *supra* n. 5.) When Appellees filed their dispositive motions on October 12, 1999, Appellant still had not presented herself for deposition or supplied responses to the supplemental discovery in compliance with the court's September 8th order, nor had she produced an expert report.

¶ 4 Appellee Methodist Hospital filed its motion for summary judgment on October 12, 1999, on the ground that Appellant had failed to submit an expert report by the October 4, 1999 deadline. In her motion in opposition, Appellant argued only that her case was one involving *res ipsa loquitur* and, therefore, no expert report was necessary.

¶ 5 Appellees Partners in Women's Health, Jack Janofsky, M.D., and Joseph Talvacchia, D.O. filed their motion for summary judgment on October 12, 1999, also on the ground that Appellant had not produced an expert report to establish any causal connection between the alleged negligent acts of Appellees and the alleged resultant harm to Appellant. In her motion in opposition, Appellant again argued only that her case was one involving *res ipsa loquitur* and, therefore, no expert report was necessary.

¶ 6 On October 29, 1999, Appellant filed a separate Petition for Extraordinary Relief from the established discovery and pre-trial deadlines and asked to extend those deadlines by six months, during which time counsel promised he would present Appellant for oral deposition and provide an expert report. Counsel also urged the court to forgive Appellant's discovery failures. This petition was filed after the expiration of both the discovery deadline of September 7, 1999 and the expert witness deadline of October 4, 1999.[6] Appellees unanimously opposed Appellant's Petition for Extraordinary Relief on the grounds that Appellant had been dilatory in responding to Appellees' supplemental discovery requests, had failed to present herself for deposition, had failed to obtain an expert report in a timely manner, and had failed to file her Petition in a timely manner.

---

**6.** We note that the Philadelphia County case management program requires all Petitions for Extraordinary Relief from the deadlines set forth in the Case Management Order to be filed before the expiration of the date of the applicable deadline. *See Wolloch v. Aiken,* 756 A.2d 5, 9 n. 3 (Pa.Super.2000), *appeal granted in part,* 564 Pa. 134, 135, 764 A.2d 1051 (2000).

¶ 7 Appellees Partners in Women's Health, Jack Janofsky, M.D., and Joseph Talvacchia, D.O. also filed a motion *in limine* to preclude Appellant from presenting any evidence or testimony on her behalf at the time of trial, on the basis of Appellant's failure to comply with the court's discovery order of September 8th.

¶ 8 On January 28, 2000, the trial court filed four orders (dated January 20, 2000). The court's first order denied as moot Appellees' motion to preclude. The court's second order denied as moot Appellant's Petition for Extraordinary Relief. The court's third order granted summary judgment in favor of Appellees Partners in Women's Health, Jack Janofsky, M.D., and Joseph Talvacchia, D.O. The court's fourth order granted summary judgment in favor of Appellee Methodist Hospital. Appellant timely filed her notices of appeal on February 17, 2000 from the orders granting summary judgment and the order denying as moot her Petition for Extraordinary Relief.

¶ 9 Appellant raises the following issues for our review:

THE TRIAL COURT ERRED IN DISMISSING [APPELLANT'S] COMPLAINT WITH PREJUDICE FOR HER FORMER COUNSEL'S UNDISCLOSED FAILURE TO COMPLY WITH DISCOVERY.

THE TRIAL COURT ERRED AND OTHERWISE FAILED TO CONSIDER THE SEVERE PREJUDICE TO [APPELLANT].

THE TRIAL COURT ERRED IN DISMISSING [APPELLANT'S] PLEADINGS WITH PREJUDICE IN LIGHT OF HER NEW TRIAL COUNSEL'S EFFORTS TO RECTIFY PRIOR COUNSEL'S TRANSGRESSIONS AND TO MEET THE DISCOVERY OBLIGATIONS IMPOSED.

(Appellant's Brief at 4).

¶ 10 Dismissal of an action pursuant to Rule 1035.2 of the Pennsylvania Rules of Civil Procedure governing summary judgment implicates the following principles:

### RULE 1035.2 MOTION

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. A proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Pa. R.C.P. 1035.2 *Note.* Where a motion for summary judgment is based upon insufficient evidence of facts, the adverse party must come forward with evidence essential to preserve the cause of action. *Id.* If the non-moving party fails to come forward with sufficient evidence to es-

tablish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law. The non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party. As with all summary judgment cases, the court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party as to the existence of a triable issue.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate Court applies the same standard for summary judgment as the trial court.

*McCarthy v. Dan LePore & Sons Co., Inc. et al.,* 724 A.2d 938, 940–41 (Pa.Super.1998), *appeal denied,* 560 Pa. 707, 743 A.2d 921 (1999) (internal citations omitted). However, the Rules applicable to summary judgment allow the non-moving party to supplement the record with any evidence essential to justify the non-moving party's opposition to the motion. Pa.R.C.P. 1035.3(b).

 ¶ 11 With respect to the court's discretion, we note:

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly,

the trial court abuses its discretion if it does not follow legal procedure. *Miller v. Sacred Heart Hosp.,* 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted). Where the order at issue is entered not as a sanction, but to address a substantive deficiency of proof in the cause of action, the order is properly subject to review under Rule 1035.2 and cases interpreting that rule. *Id.*

 ¶ 12 Dismissal of an action is also permissible as a discovery sanction under Rule 4019 of the Pennsylvania Rules of Civil Procedure. *Stewart v. Rossi,* 452 Pa.Super. 120, 681 A.2d 214 (1996), *appeal denied,* 547 Pa. 731, 689 A.2d 235 (1997). Dismissal as a discovery sanction "should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced." *Id.* at 217. To that end, our Court has articulated a four-part test as follows:

We first examine the party's failure in light of the prejudice caused to the other party and whether that prejudice can be cured. A second factor to be examined in reviewing a sanction is the defaulting party's willfulness or bad faith in failing to comply with the discovery order, *i.e.,* the merits of [the] excuse. Third, we consider the number of discovery violations. Repeated discovery abuses are disapproved. Finally ... the importance of the precluded evidence in light of the failure must be considered.

*Steinfurth v. LaManna,* 404 Pa.Super. 384, 590 A.2d 1286, 1289 (1991) (internal citations omitted). This test is implicated when the court imposes sanctions as a result of failure to disclose an expert's facts and opinions otherwise discoverable under the provisions of Rule 4003.1. Each factor of the test "represents a necessary consideration and not a necessary prereq-

uisite...." *Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating,* 698 A.2d 625, 629 (Pa.Super.1997), *appeal denied,* 553 Pa. 689, 717 A.2d 1028 (1998). Moreover, as this Court has said:

> The factors we included in this test reveal our concern only with the pattern and effect of the defaulting party's conduct in violating discovery, and have no direct relevance to the elements of the plaintiff's cause of action.
>
> We conclude, accordingly, that our decision in *Steinfurth* prescribes the proper inquiry for application of discovery sanctions under Rule 4019 (SANCTIONS) not summary judgment under Rule 1035.2 or its predecessor....

*Miller, supra* at 832.

¶ 13 Dismissal of an action in the form of a judgment of *non pros* depends on the test enunciated by our Supreme Court as follows:

> To dismiss a case for inactivity pursuant to a defendant's motion for *non pros* there must first be a lack of due diligence on the part of the plaintiff ... to proceed with reasonable promptitude. Second, the plaintiff must have no compelling reason for the delay. Finally, the delay must cause **actual** prejudice to the defendant. As always, this determination is to be made by the trial court, whose decision will not be disturbed absent an abuse of discretion.

*Jacobs v. Halloran,* 551 Pa. 350, 358–59, 710 A.2d 1098, 1103 (1998) (emphasis added).[7]

¶ 14 The instant case presents us with a thorny situation in terms of our scope and standard of review. Here, Appellees' motions for summary judgment were based solely on Appellant's failure to obtain and produce an expert report and/or *curriculum vitae* in accordance with the requirements of applicable Pennsylvania law. This premise directly implicates the elements of Appellant's cause of action. Appellant's sole response in opposition to summary judgment was that her case was one involving *res ipsa loquitur* and, therefore, no expert report was necessary. Nevertheless, in its opinion, no doubt in response to Appellant's Concise Statement of Matters Complained of on Appeal, the court supported its decision to dismiss Appellant's action with an analysis set forth under the standards of judgment of *non pros.* Notwithstanding Appellant's characterization on appeal of the dispositive orders as discovery sanctions or the court's response to Appellant's Concise Statement of Matters Complained of on Appeal, the court's orders granted **summary judgment** in favor of the movants and against Appellant.

¶ 15 We note that Appellees did not seek a judgment of *non pros,* despite the discussion set forth in the trial court's opinion; and no motion for judgment of *non pros* appears in the record. Although Appellees sought court intervention to compel discovery responses, and obtained orders compelling Appellant's answers to supplemental discovery and her oral deposition within a fixed time, the court denied as moot Appellees' motion for preclusion. Thus, this case does not involve an order precluding Appellant's testimony at trial, or that of her expert, which later led to a

---

7. As noted in *Miller, supra* with respect to dismissal as a discovery sanction, the factors included in the test applicable to a judgment of *non pros* also reveal our concern only with the pattern and effect of the defaulting party's conduct in failing to pursue a case with due diligence, and have no direct relevance to the elements of a plaintiff's cause of action. This is not to be confused with, for example, summary judgment or compulsory non-suit, both of which necessarily and directly implicate the elements of a plaintiff's cause of action.

grant of summary judgment as in *Steinfurth, supra.*

¶ 16 To the contrary, the record reveals that the court's summary judgment orders dismissed Appellant's case. Procedurally, Appellees moved for summary judgment after discovery was closed by the existing case management order. The sole basis for summary judgment according to Appellees was Appellant's failure to submit or disclose any expert report as required in medical malpractice actions. Appellant's sole response was that her case was one involving *res ipsa loquitur* and, therefore, no expert report was necessary. Thus, the motions rested on Appellant's failure to present an essential element of her cause of action by the close of discovery. Because this case presents us with summary judgments involving "a substantive deficiency of proof in [Appellant's] cause of action, the order[s][are] properly subject to review only under Rule 1035.2 and cases interpreting it." *See Miller, supra* at 833.

¶ 17 On appeal, Appellant now asserts that her former attorney committed an undisclosed failure to comply with discovery. Appellant claims that the trial court unfairly burdened her, as a layperson, with the duty to supervise her former counsel's handling of the file. She maintains that she did not sufficiently comprehend or understand the process to serve as a substantive check on the quality and nature of her former counsel's work product. Further, Appellant argues that the trial court ignored the restorative steps taken by her new counsel in very short order in an extreme effort to comply with the discovery deadlines. Appellant concludes that the trial court erred in issuing the "ultimate sanction of dismissal with prejudice" as a result of the inadvertent discovery violations.

¶ 18 We have, however, already rejected this characterization of the trial court's orders when we concluded that both the trial court's opinion and Appellant's argument applied inappropriate standards of *non pros* and discovery violations respectively. Therefore, our review of the propriety of the summary judgment orders must be confined to whether there is a substantive deficiency of proof in Appellant's cause of action that warranted dismissal under Rule 1035.2. *See id.*

¶ 19 Well-settled Pennsylvania makes clear that a plaintiff must establish the following to state a cause of action for medical malpractice in this Commonwealth:

(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of the duty was the proximate cause of, or a substantial factor in bringing about the harm suffered by the patient; and, (4) the damages suffered by the patient were a direct result of the harm. Moreover, the patient must offer an expert witness who will testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable standards, and that such deviation was the proximate cause of the harm suffered.

*Eaddy v. Hamaty,* 694 A.2d 639, 642 (Pa.Super.1997) (internal citations omitted). An exception to the requirement of expert testimony in medical malpractice actions applies "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even lay persons." *Hightower–Warren v. Silk, M.D.,* 548 Pa. 459, 463 n. 1, 698 A.2d 52, 54 n. 1 (1997) (citing *Jones v. Harrisburg Polyclinic Hosp.,* 496 Pa. 465, 437 A.2d 1134 (1981)). In *Jones,* the Pennsylvania Supreme Court applied the doctrine of *res ipsa loquitur* in a medical malpractice case. *Id.*

Under a *res ipsa loquitur* theory of liability, it may be inferred that the harm suffered is caused by the negligence of the defendant when:

(a) the event is of the kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to plaintiff.

Restatement (Second) of Torts § 328(D) (1965).

*Hightower–Warren, supra* at 463–64, 698 A.2d at 54. This evidentiary doctrine serves the purpose of aiding plaintiffs in making a *prima facie* case of negligence. *D'Ardenne by D'Ardenne v. Strawbridge & Clothier, Inc.,* 712 A.2d 318 (Pa.Super.1998), *appeal denied,* 557 Pa. 647, 734 A.2d 394 (1998). The doctrine allows an inference of negligence to arise from competent evidence, on the theory that in the ordinary course of events, the injury complained of would not have occurred in the absence of negligence. *Id.* at 321.

■ ¶ 20 Nevertheless, a review of the relevant case law reveals that *res ipsa loquitur* is not often applied in medical malpractice actions; except in the most clear-cut cases, *res ipsa loquitur* may not be used in a medical malpractice action to abrogate the need for expert testimony or to shortcut the requirement that causation be established within a reasonable degree of medical certainty. *See, e.g., Bearfield v. Hauch,* 407 Pa.Super. 624, 595 A.2d 1320 (1991) (holding no error in refusing *res ipsa loquitur* charge in case involving gall bladder operation resulting in severed nerve endings near gall bladder because

case did not involve situation in which jury could make conclusion of negligence based upon ordinary experience and comprehension); *Brophy v. Brizuela,* 358 Pa.Super. 400, 517 A.2d 1293 (1986) (holding insufficient evidence eliminating other reasonable causes beyond alleged negligence to support application of *res ipsa loquitur* in case involving tubal ligation followed by pregnancy; prohibiting use of *res ipsa loquitur* in place of expert testimony that was barred on account of plaintiff's failure to conduct discovery); *Starr v. Allegheny General Hosp.,* 305 Pa.Super. 215, 451 A.2d 499 (1982) (upholding refusal of *res ipsa loquitur* charge in case involving repair of skull fracture resulting in slurred speech, blurred vision, and various other neurological problems because injury not of type that would not ordinarily occur in absence of negligence and failure to adduce sufficient evidence to eliminate other responsible causes).

■ ¶ 21 Although raised before the trial court, Appellant has not pursued on appeal her argument regarding the application of *res ipsa loquitur.* Instead, Appellant advances a new and different theory of relief when she claims that the trial court's orders were fundamentally discovery sanctions. Therefore, we conclude, Appellant has abandoned review of whether this case constitutes a *res ipsa loquitur* exception to the medical expert requirement in medical malpractice matters.

¶ 22 Further, Appellant's appellate argument was not raised in her motions in opposition to summary judgment. Thus, we conclude that her issues on appeal are waived and likewise unreviewable. *See Harber Philadelphia Center City Office Limited v. LPCI Limited Partnership,* 764 A.2d 1100 (Pa.Super.2000) (stating party who fails to raise grounds for relief may

not assert that trial court erred in failing to address them).[8]

 ¶ 23 Moreover, even if we were to examine the applicability of the *res ipsa loquitur* doctrine, we could not conclude on this record that Appellant's alleged injury is of the type that would ordinarily not occur in the absence of negligence or that there is sufficient evidence to eliminate "other responsible causes" beyond the alleged negligence of Appellees. Here we have simply the allegations in Appellant's complaint, a pathology report with only counsel's interpretation, an ultrasound data report without interpretive text, and an allegation of a subsequent procedure by another physician. At the very least, Appellant would need to provide some expert report or testimony with respect to the pathology report, the ultrasound data report and the subsequent procedure to establish that the claims arose out of the same pregnancy, to establish causation within a reasonable degree of medical certainty, and/or to eliminate other responsible causes. Hence, we would conclude that Appellant's case as it stands is not a clear call for the application of *res ipsa loquitur* such that the absence of any expert report can be excused. *See Bearfield, supra; Brophy, supra; Starr, supra.*

¶ 24 Based upon the foregoing, we hold that the trial court properly granted summary judgment in favor of Appellees due to a substantive deficiency of proof in Appellant's cause of action. *See Miller, supra; McCarthy, supra;* Pa.R.C.P. 1035.2(2). Accordingly, we affirm the orders granting summary judgment in favor of Appellees.[9]

¶ 25 Orders affirmed.

---

8. In *Harber*, this Court wrote:

> To the extent that our former case law allowed presentation of arguments in opposition to summary judgment for the first time on appeal it stands in derogation of Rules 1035.2 and 1035.3 and is not dispositive in this matter. The Superior Court, as an error correcting court, may not purport to reverse a trial court's order where the only basis for a finding of error is a claim that the responsible party never gave the trial court an opportunity to consider.
>
> More recently, we have reaffirmed the proposition that a non-moving party's failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal.

*Id.* at 1105 (citing *Payton v. Pennsylvania Sling Co.,* 710 A.2d 1221, 1226 (Pa.Super.1998)) (internal citations omitted).

9. Due to our disposition of this case, we need not address the propriety of the trial court's decision to deny as moot Appellant's Petition for Extraordinary Relief. Although Appellant's issues on appeal were substantially presented in her Petition for Extraordinary Relief, neither the Petition nor the issues included in it formed any part of Appellant's opposition to the motions for summary judgment. *See* Pa.R.C.P. 1035(3)(b) (permitting non-moving party to supplement record in responsive motion with evidence essential to justify opposition to summary judgment or set forth reasons why party cannot yet supply essential evidence and any action proposed to be taken by non-moving party to present such evidence). Thus, the matters presented in the untimely Petition for Extraordinary Relief are not part of the summary judgment analysis and cannot be grounds for relief from the summary judgment orders.