**Michael KOSTRYCKYJ and Chrystyna Rakoczy, H/W, Appellants**

v.

**PENTRON LABORATORY TECHNOL- OGIES, LLC, Hubert C. Jasinski Dental Laboratory, Inc. d/b/a Newtech Dental Laboratory, Hackman Dental Labs, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued March 13, 2012.

Filed July 27, 2012.

**334**

Ruben Honik, Philadelphia, for appellants.

Jodi D. Oley, Philadelphia, for Jasinski Dental, appellee.

BEFORE: GANTMAN, J., SHOGAN, J., and WECHT, J.

OPINION BY GANTMAN, J.:

Appellants, Michael Kostryckyj and Chrystyna Rakoczy ("Husband" and "Wife"), appeal from the order entered in the Philadelphia County Court of Common Pleas, marking this case settled, discontinued, and ended. The order made final the court's previous summary judgment in favor of Appellee, Hubert C. Jasinksi Dental Laboratory, Inc. d/b/a Newtech Dental Laboratory, in this toxic tort case.[1] Husband and Wife ask us to determine whether the trial court erred in granting Appellee's motion for summary judgment, where material facts were in dispute and the court misapplied *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 606 A.2d 444 (1992) (setting forth exception to exclusivity of Pennsylvania Workers Compensation Act ("WCA")). We hold that Husband and Wife failed to set forth a *prima facie* case of fraudulent misrepresentation necessary to satisfy the *Martin* exception to the exclusivity of the WCA. Accordingly, we affirm.

The trial court opinion fully and correctly set forth the relevant facts of this case as follows:

> [Husband] has worked as a dental technician for nearly 30 years for several different dental laboratories. Specifically, from 1980 until 1982, he performed various procedures including, but not limited [to], casting, cutting, grinding and polishing dental alloys containing beryllium.[2] These alloys were allegedly manufactured by Defendant Pentron and sold under the brand name Rexillium III. From 1984 until 1995, [Husband] operated his own dental laborato-

---

1. Defendants Pentron Laboratory Technologies and Hackman Dental Labs, Inc. settled claims with Husband and Wife and are not parties to this appeal.

2. Beryllium is a silver-gray metallic substance which was once widely used in the dental industry as a non-precious alloy in prosthetics, implants, and other dental products. Inhaling beryllium particles can lead to chronic beryllium disease ("CBD").

ry known as Crowning Glory. The complaint does not mention whether during the 11 years he operated Crowning Glory, he handled beryllium-containing alloys. The complaint indicates that sometime in 1995, he began reusing Rexillium III.

In 1998, [Husband] commenced experiencing increased shortness of breath and sought treatment with Edward Schuman, M.D., a pulmonologist at Holy Redeemer Hospital. On October 21, 1998, he was diagnosed with sarcoidosis, a chronic inflammatory disease of the lungs of unknown origin.

In 2000, [Husband] started working with [Appellee], as a dental ceramist, where allegedly he was exposed to respirable beryllium dust, fumes, and particulate matter from using Rexillium III.

In 2002, [Husband] began treatment with Dr. Jennifer Weibel at Thomas Jefferson University Hospital. Diagnostic studies performed by Dr. Weibel between December 2002 and March 2008, confirmed the diagnosis of sarcoidosis. In 2003, [Husband] left [Appellee] and began working with Defendant Hackman, where allegedly he continued to be exposed to beryllium.

On September 15, 2008, [Husband] was seen by Milton Rossman, M.D., in the Sarcoidosis and Interstitial Lung Disease Program at the Penn Lung Center. Dr. Rossman ascertained that despite [Husband's] occupational history, he had never been fully evaluated for any beryllium-related conditions. Dr. Rossman noted that Dr. Schuman had previously diagnosed [Husband] with sarcoidosis based on a bronchoscope and a chest CT study, and no other sign or symptom of the disease. As a follow up, Dr. Rossman ordered additional studies including, a [bronchoalveolar] lavage lymphocyte proliferation test (BAL–LPT) and a

lung biopsy. On October 16, 2008, Dr. Rossman diagnosed [Husband] with chronic beryllium disease.

(Trial Court Opinion, filed October 19, 2011, at 2–3) (internal footnotes omitted).

Procedurally, Husband and Wife filed their initial complaint on February 17, 2009, including one count against Appellee for "Intentional Conduct with a Substantial Certainty of Causing Injury." On April 3, 2009, Husband and Wife amended their complaint and the count against Appellee revising it as a claim for fraudulent misrepresentation. Appellee filed an answer to the amended complaint on May 8, 2009. Following completion of discovery, Appellee filed a motion for summary judgment on February 7, 2011. The trial court opinion continues:

[Appellee's] motion for summary judgment was granted on May 9, 2011. [Husband and Wife] did not file a motion for reconsideration, but instead, on May 16, 2011, advised the [court] that the May 17, 2011 pre-trial conference was no longer necessary because a settlement had been reached with Defendants Hackman and Pentron, and ... summary judgment had been granted in favor of [Appellee]. On May 23, 2011, [the court] issued an Order marking the matter settled, discontinued, and ended. On June 8, 2011, [Husband and Wife] filed the instant appeal with the Superior Court.

In response to an Order issued on June 15, 2011, in accordance with Pa.R.A.P. 1925(b), [Husband and Wife], on July 6, 2011, filed of record and served onto [the trial court] a Statement of Matters Complained of on Appeal. . . .

(*Id.* at 3–4).

Husband and Wife raise one issue for our review:

WHETHER THE TRIAL COURT ERRED IN ENGRAFTING THE ELEMENT OF "KNOWLEDGE" ONTO THE *MARTIN* STANDARD AND THEREAFTER GRANTING [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT ON [HUSBAND AND WIFE'S] FRAUDULENT MISREPRESENTATION CLAIM IN THE FACE OF DISPUTED MATERIAL FACTS CONCERNING SUCH KNOWLEDGE?

(Husband and Wife's Brief at 3). Initially we observe:

"Our scope of review of an order granting summary judgment is plenary." *Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1103 (Pa.Super.2000), *appeal denied*, 566 Pa. 664, 782 A.2d 546 (2001). "[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact." *Id.* "We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." *Caro v. Glah*, 867 A.2d 531, 533 (2004) (citing *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002)).

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [his] cause of action. *Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1145 n. 7 (Pa.Super.2001). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa. R.C.P. 1035.2. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. *Grandelli, supra* at 1143 (citing Pa. R.C.P. 1035.2 Note). "Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions." *Grandelli, supra* at 1144. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion. *Caro, supra.*

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted). "Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden." *Paden v. Baker Concrete Constr., Inc.*, 540 Pa. 409, [412], 658 A.2d 341, 343 (1995) (citation omitted).

[I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if ... charged with the duty imposed on the court below; it is necessary to go

further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused. *Id.* (internal quotations and citations omitted).

*Bartlett v. Bradford Publishing, Inc.,* 885 A.2d 562, 566 (Pa.Super.2005).

*Lineberger v. Wyeth,* 894 A.2d 141, 145–46 (Pa.Super.2006) (emphasis added).

■ Husband and Wife concede the WCA is generally the exclusive means of recovery against an employer for an employee injured in the course and scope of his employment. Husband and Wife, however, invoke the *Martin* exception to the exclusivity of the WCA. Husband and Wife maintain the *Martin* exception applies to their case because they have produced sufficient evidence to satisfy the two required elements of the *Martin* exception. As to the first element, Husband and Wife claim Appellee knew the dangers associated with beryllium and not only failed to warn Husband about those dangers but also continued to expose Husband to beryllium-based products. Husband and Wife maintain Appellee failed to implement a testing system to determine whether employees had contracted a beryllium-based disease, even though the Occupational Safety and Health Administration ("OSHA") issued a bulletin to Appellee recommending a testing system for that purpose. As to the second element under *Martin,* Husband and Wife contend their expert's report demonstrates that Appellee's misrepresentation regarding the dangers of beryllium caused Husband to go undiagnosed for CBD and led to the aggravation of Husband's pre-existing condition.

Further, Husband and Wife assert the trial court incorrectly enlarged the required elements necessary to satisfy the *Martin* exception by introducing an element of knowledge, such that they had to demonstrate Appellee knew of Husband's pre-existing condition. Husband and Wife maintain *Martin* did not expressly discuss a knowledge requirement. Alternatively, Husband and Wife suggest Appellee witnessed Husband's "explosive cough" and saw that he suffered from shortness of breath, which Husband and Wife contend was sufficient to put Appellee on notice of Husband's existing pulmonary health problems. Husband and Wife conclude material questions of fact exist concerning Appellee's actions, and the trial court erred in granting summary judgment in favor of Appellee. We disagree.

With respect to the general provisions under the WCA, this Court has stated:

> In general, the WCA provides the sole and exclusive remedy for an employee who seeks to recover for an injury sustained during the course of his ... employment. The WCA sets forth the following exclusivity provision:
>
> § 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party
>
> (a) The liability of an employer under this act shall be exclusive and in the place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death. . . .

77 P.S. § 481(a).

This provision limits an employer's tort exposure and grants an employee a statutory remedy for all work related injuries. In exchange for the right to

compensation without the burden of establishing fault, employees gave up their right to sue the employer in tort for injuries received in the course of employment. An employer must assume liability under the Act regardless of fault in exchange for insulation from a potentially larger verdict in a common law action.

Where an employee's injury is compensable under the Act, the compensation provided by the statute is the employee's exclusive remedy.

*Soto v. Nabisco, Inc.* 32 A.3d 787, 790–91 (Pa.Super.2011) (some internal citations and quotation marks omitted).

■ Our Supreme Court in *Martin* carved out a very narrow exception to the exclusivity provision of the WCA where the employee demonstrates (1) fraudulent misrepresentation, which (2) leads to the aggravation of an employee's pre-existing condition. The Court explained:

> There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who **actively** mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.

*Martin, supra* at 18, 606 A.2d at 448 (emphasis in original). Therefore, where an employee can establish the two-pronged exception, he may proceed against an employer in a common law fraudulent misrepresentation action, outside of the WCA. *See id.* (holding employee could proceed against employer in action for fraudulent misrepresentation where employee's complaint alleged, inter alia, employee was regularly exposed to lead fumes and dust at place of employment, employer tested employee's blood to monitor lead levels, employer willfully and intentionally withheld employee's test results which showed employee had developed lead-related diseases, *and* employer subsequently altered those results to induce employee to continue working for employer; employee further alleged employer's concealment of employee's condition prevented employee from reducing his exposure to lead and obstructed him from receiving appropriate medical treatment, and that delay in treatment resulted in aggravation of employee's injury). *See also Fry v. Atlantic States Ins. Co.,* 700 A.2d 974 (Pa.Super.1997), appeal denied, 555 Pa. 707, 723 A.2d 1025 (1998) (interpreting Martin exception to require both fraud and delay leading to exacerbation of injury to remove claim from WCA).

■ To establish a *prima facie* case of fraud, a plaintiff must show:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; **and** (6) the resulting injury was proximately caused by the reliance.

*Hart v. Arnold,* 884 A.2d 316, 339 n. 7 (Pa.Super.2005), *appeal denied,* 587 Pa. 695, 897 A.2d 458 (2006) (emphasis added) (citing *Blumenstock v. Gibson,* 811 A.2d 1029, 1034 (Pa.Super.2002), *appeal denied,* 573 Pa. 714, 828 A.2d 349 (2003)). "Unsupported assertions and conclusory accusations cannot create genuine issues of material fact as to the existence of fraud." *Hart, supra.*

> Concerning the proof of fraud, our cases have consistently enunciated a very high standard. E.g., *Yoo Hoo Bottling Co. of Pennsylvania, Inc. v. Leibowitz,* 432 Pa. 117, 247 A.2d 469 (1968) ("clear, precise and convincing"); *Gerfin v. Colonial*

*Smelting and Refining Co., Inc.*, 374 Pa. 66, 97 A.2d 71 (1953) ("clear, precise and indubitable"); *New York Life Ins. Co. v. Brandwene*, 316 Pa. 218, 172 A. 669 (1934) ("clear and satisfactory"). The question then becomes whether [plaintiff's] proof of every element met this exacting standard.

[W]e must examine whether a fraudulent misrepresentation was uttered. Initially, we note that a fraudulent misrepresentation can take many forms: fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word or mouth, of look or gesture. It is any artifice by which a person is deceived to his disadvantage.

*Scaife Co. v. Rockwell–Standard Corp.*, 446 Pa. 280, 285–86, 285 A.2d 451, 454 (1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972) (some internal citations and quotation marks omitted). "Where a plaintiff asserts fraudulent misrepresentation without showing that the defendant intended to mislead the plaintiff into reliance on the misrepresentation, the defendant is entitled to judgment as a matter of law." *David Pflumm Paving & Excavating, Inc. v. Foundation Services Co.*, 816 A.2d 1164, 1171 (Pa.Super.2003) (affirming summary judgment in favor of defendants where plaintiff's complaint did not allege defendants' intent to mislead and record revealed no evidence to support defendants' intent to mislead; thus, plaintiff was unable to satisfy test for fraudulent misrepresentation).

Since *Martin*, Pennsylvania courts have consistently interpreted the two-pronged exception very narrowly, often dismissing a plaintiff's common law action for failure to satisfy at least one prong of the test. *See, e.g., Ranalli v. Rohm and Haas Co.*, 983 A.2d 732 (Pa.Super.2009), *appeal denied*, 608 Pa. 642, 9 A.3d 631 (2010) (reversing trial court's order overruling employer's preliminary objections; holding employee was unable to present *prima facie* case of fraudulent misrepresentation, where employer had no knowledge of dangers associated with vinyl chloride until long after employee's employment ended); *Wendler v. Design Decorators, Inc.*, 768 A.2d 1172 (Pa.Super.2001) (affirming summary judgment in favor of employer even though evidence showed employer willfully disobeyed OSHA warnings resulting in death of employee, because *Martin* exception involves aggravation of pre-existing injury; employee cannot bring claim under *Martin* for direct injury); *Snyder v. Specialty Glass Products, Inc.*, 441 Pa.Super. 613, 658 A.2d 366, 371 (1995) (affirming trial court's order sustaining defendant's preliminary objections, where plaintiff sought relief for work-related injury, not aggravation of pre-existing injury).[3]

Instantly, in discussing Husband and Wife's evidence of fraudulent misrepresentation, the court explained:

[Husband and Wife] ... argue that [Appellee] did not adequately warn its employees of the general dangers of beryllium and did not employ the most stringent safety measures available. [Husband and Wife] contend that [Appellee's] Founder and President, Hubert Jasinski, read the warnings about the

---

**3.** *Ranalli, supra* seemed to suggest *Martin* might include an additional knowledge element, such that to proceed, the plaintiff must also establish the employer knew about the employee's pre-existing condition. The facts in *Martin* did involve the employer's knowl- edge of the plaintiff's pre-existing condition. Our careful review of *Martin* and its progeny, however, shows that *Martin* did not expressly articulate a separate knowledge element. *See generally Wendler, supra; Fry, supra; Snyder, supra.*

risks posed from using beryllium-based alloys and simply told the employees, "You don't want to breathe this, wear a mask." In support of this inadequate warning contention, [Husband and Wife] rely on a late February 2003 site inspection by [OSHA] at which time [Appellee] was cited for not having sufficient warnings in the work place.

[Husband and Wife] also rely on their expert, Michael Van Dyke, PhD., who opined that [Appellee] could have utilized stronger safety measures. Dr. Van Dyke apparently conducted a site visit to [Appellee's] laboratory in 2011 to "evaluate current conditions and relate these with conditions to beryllium exposures [Husband] incurred while working at this facility from [January 2000] to [March 2003]." In his report, Dr. Van Dyke writes: "At the time of my visit to the facility, it was reported that the business was very similar in terms of the scope of the work they performed, though the use of beryllium containing alloys had been discontinued." Dr. Van Dyke opined that it is likely that [Husband] was exposed to beryllium in the workplace. **However, in his report, Dr. Van Dyke was not critical of any fraudulent misrepresentation and/or misconduct attributable to [Appellee] but merely criticizes the workplace conditions at [Appellee's] laboratory.** As stated by the *Martin* [C]ourt,

> There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.

[*Martin, supra* at 18, 606 A.2d] at 447–48.

Under the circumstances noted, [the court] opines that [Husband and Wife's] reliance on the lack of adequate safety measures at the worksite is misplaced and is not sufficient to establish an exception to the exclusivity provision of the [WCA].

(Trial Court Opinion at 7–8) (internal footnote omitted) (emphasis added). Regardless of whether the trial court found Husband and Wife failed to demonstrate Appellee knew of Husband's pre-existing condition, Husband and Wife remained unable to satisfy the *Martin* exception because they did not make out a *prima facie* case of fraudulent misrepresentation. Viewing the record in the light most favorable to Husband and Wife, we agree they failed to present any evidence that Appellee intended to mislead Husband or deliberately misrepresented the dangers of beryllium to induce Husband to continue working for Appellee. *See Pflumm, supra.* The facts of this case do not present a situation where Appellee actively deceived Husband in the manner contemplated by the *Martin* Court. Consequently, Appellee was entitled to judgment as a matter of law. *Id.*

Based upon the foregoing, we hold that Husband and Wife failed to set forth a *prima facie* case of fraudulent misrepresentation necessary to satisfy the *Martin* exception to the exclusivity of the WCA. Accordingly, we affirm. *See Wilson v. Transport Ins. Co.*, 889 A.2d 563 (Pa.Super.2005) (explaining appellate court can affirm trial court's decision on any basis if decision is correct).

Order affirmed.