J-A32022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LISA BALL AND RONALD BALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HOLY REDEEMER HEALTH SYSTEM, | : | |
| GEMMA ROZMUS, M.D. AND GILBERT | : | |
| TAUSCH, M.D. | : | No. 3761 EDA 2015 |
| | : | |
| | : | |
| APPEAL OF: LISA BALL | : | |

Appeal from the Order Entered November 30, 2015
in the Court of Common Pleas of Montgomery County
Civil Division at No(s):  09-12319

| | | |
|---|---|---|
| LISA BALL AND RONALD BALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HOLY REDEEMER HEALTH SYSTEM, | : | |
| GEMMA ROZMUS, M.D. AND GILBERT | : | |
| TAUSCH, M.D. | : | No. 136 EDA 2016 |
| | : | |
| | : | |
| APPEAL OF: GILBERT TAUSCH, M.D. | : | |

Appeal from the Order Entered November 30, 2015
in the Court of Common Pleas of Montgomery County
Civil Division at No(s):  09-12319

BEFORE:   DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED MARCH 03, 2017**

_____

[*] Retired Senior Judge assigned to the Superior Court.

Lisa Ball ("Appellant") appeals at 3761 EDA 2015 from the trial court's November 30, 2015 order granting the joint motion of Holy Redeemer Health System, Gemma Rozmus, M.D., and Gilbert Tausch, M.D. (collectively, "Appellees") to preclude the testimony of her expert witness and granting Appellees' subsequent motion for summary judgment. We affirm.

Gilbert Tausch, M.D., cross-appeals at 136 EDA 2016 and avers that prior to the trial court ruling dismissing the entire action, the court should have granted his motion for summary judgment pertaining to 40 P.S. § 1303.512(b) of the Medical Care Availability and Reduction of Error ("MCARE") Act.[1] As will be discussed herein, we decline to address Dr. Tausch's appeal on the merits.

We derive the following statement of facts from our thorough review of the trial court opinion and the underlying record, which includes depositions, medical records, expert reports, and argument transcript testimony.[2] Moreover, we view this record in the light most favorable to Appellant as the non-moving party. *See Summers v. Certainteed Corp.*, 997 A.2d 1152, 1161 (Pa. 2010).

---

[1] Appellant's appeal, and Appellee's cross-appeal, were consolidated by this Court.

[2] We note that the trial court opinion does not include citations to the record, nor does Appellant's brief include sufficient citations to its seven-volume reproduced record or the 5274 page certified record. However, as the questions presented are not issues of fact but of law, these deficiencies do not impede our review.

On April 28, 2007, Lisa Ball was taken by ambulance to Holy Redeemer Hospital and Medical Center Emergency Department with symptoms of slurred speech, left hand weakness, and headache. Ms. Ball's patient chart reflects that her family informed hospital staff they suspected she was abusing prescription narcotics prescribed for severe migraines.

Dr. Gemma Rozmus evaluated Ms. Ball and ordered diagnostic tests, including a CT scan, which revealed no medical issues. She consulted with Dr. Gilbert Tausch, on-call neurologist, who noted that Appellant was asymptomatic for a stroke. Based on Ms. Ball's history, Dr. Tausch suspected narcotic abuse. Ms. Ball became more lethargic and, as a result, Dr. Rozmus ordered administration of 0.2 mg of intravenous Narcan.

Almost immediately, Ms. Ball awoke but became agitated and combative. She thrashed on the bed, crying, screaming, and attempting to rip out her IV. Security was called and Ms. Ball's family members assisted in physically restraining her. Ativan was administered. Ms. Ball's thrashing continued; she was placed in Velcro restraints and given a second dose of Ativan. Finally, doctors ordered morphine to combat withdrawal symptoms and were able to stabilize her.[3]

_____

[3] Once stabilized, Ms. Ball was admitted to the intensive care unit at Holy Redeemer Hospital, and later diagnosed with viral meningitis, a diagnosis not at issue in the instant matter.

On April 28, 2009, Appellant initiated the instant action via writ of summons, followed by a complaint. Appellant averred that Appellees were negligent for failing to properly anticipate and/or control her reaction to Narcan and for failing to properly restrain her, increasing the risk that Appellant would suffer physical injury. Appellees filed preliminary objections; Appellant filed an amended complaint. Appellees again filed preliminary objections, which the court sustained. Appellees filed answers with new matter to the amended complaint.

Appellant sought extensions of time in which to produce expert reports, which the court granted. In September 2013, Appellant served Appellees with the report of her standard of care expert, Dr. Ira Mehlman. Over a year later, on November 6, 2014, Appellees filed a request for updated medical records and discovery responses. Trial was scheduled for November 30, 2015.

All parties filed a number of motions *in limine*, seeking to preclude and admit certain evidence. We will address only those motions relevant to the disposition of our appeal.

First, Appellant filed a motion seeking to preclude evidence or testimony of any alleged prescription drug abuse and any evidence concerning Mr. Ball's training in how to properly and safely restrain a person. The trial court entered an order allowing admission of evidence of

Appellant's drug abuse and excluding evidence of Mr. Ball's training in safely and properly restraining a person.

Second, Appellee Dr. Tausch filed a motion seeking to preclude expert testimony by Dr. Ira Mehlman as to any alleged breaches of the standard of care by Dr. Tausch. The court initially granted this motion and precluded standard of care evidence. However, Appellant filed a motion for reconsideration, which was granted. The court allowed Dr. Mehlman to provide standard of care testimony at trial only as it pertained to the physical restraint of Appellant in the emergency room.

In November 2015, Appellant videotaped Dr. Mehlman's trial testimony. Following *voir dire*, Appellees objected to his qualifications.

Notably, in contrast to his *curriculum vitae*, Dr. Mehlman's testimony revealed that he had not practiced clinically since the latter portion of 2010 and that he was no longer board certified in emergency medicine. Further, although Dr. Mehlman testified that he was scheduled to give several lectures in the future, he acknowledged that he had not been actively involved in teaching at a medical school since late 2010.

Based upon these admissions, Appellees filed a joint motion to preclude Dr. Mehlman's testimony, asserting that he was not qualified to testify as an expert. **See** Joint Motion *in Limine*, 11/25/2015, at ¶¶ 19-25 (citing in support 40 P.S. § 1303.512(b). In addition, Appellees moved for summary judgment, asserting that without expert testimony, Appellant

could not establish a *prima facie* case. Following argument, the court granted the motion, precluding the testimony of Dr. Mehlman and granting summary judgment in favor of Appellees. The court dismissed Appellant's complaint with prejudice.

On December 4, 2015, Appellant filed a motion for reconsideration of that order. Prior to the court's ruling, Appellant timely filed an appeal. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial court issued a responsive opinion.

On January 5, 2016, Appellee/Cross-Appellant Gilbert Tausch, M.D., filed an appeal. Appellee also filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[4]

On appeal, Appellant Lisa Ball raises the following issues for our review:

> A. Whether the trial court committed an error of law, or an abuse of discretion, by imposing the most severe of sanctions of dismissing the underlying action without due consideration of lesser sanctions?
>
> B. Under Pennsylvania law, did the trial court commit an error of law, or an abuse of discretion, when the court denied [Appellant's] motion *in limine* to exclude any evidence of, or reference to, [Appellant's] alleged drug abuse where the administration of Narcan was not contested?

Appellant's Brief at 6 (unnecessary capitalization omitted).[5]

_____

[4] From our review of the record, it does not appear that the court issued an opinion pursuant to Pa.R.A.P. 1925(a) in response to Dr. Tausch's statement of errors pursuant to Pa.R.A.P. 1925(b).

Additionally, Cross-Appellant, Dr. Gilbert Tausch, M.D., raises the following additional issues for our review:

> A. Whether the trial court erred in granting Appellant-Plaintiff's motion for reconsideration and allowing Plaintiff's expert, Dr. Mehlman to testify as to the standard of care of Appellee-Defendant, Dr. Tausch?
>
> B. Whether the trial court erred in precluding evidence and/or testimony regarding Appellant-Plaintiff's husband's training in the safe and proper restraint of people?

Appellee/Cross-Appellant's Brief at 9. Dr. Tausch raised these issues on cross appeal to preserve his issues in the event of a possible remand. As Appellant's first issue is dispositive, we decline to address Dr. Tausch's appeal on the merits.

Our standard of review is well settled.

> The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine

*(Footnote Continued)* ――――――――――

[5] Two *amicus curiae* briefs have been filed in this matter, one by Stephen Friedman, M.D., J.D., and the second by Dr. Mehlman himself. However, as both were filed after the date of the filing of the party whose position as to reversal they support, they are late and will not be considered. ***See*** Pa.R.A.P. 531(b)(4) ("An *amicus curiae* brief must be filed on or before the date of the filing of the party whose position as to affirmance or reversal the *amicus curiae* will support.").

- 7 -

issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion…

*Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 566–67 (Pa. 2005) (citations omitted). To the extent this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. *Truax v. Roulhac*, 126 A.3d 991, 996 (Pa. Super. 2015).

Appellant first claims that the court erred in strictly applying the five-year requirement and dismissing the underlying action. *See* Appellant's Brief at 6, 13. She claims that Dr. Mehlman was qualified and competent under the MCARE Act to testify at trial and even if he was not qualified, a lesser sanction than dismissal of the action was warranted. *Id.* For example, Appellant suggests that the court could have granted a continuance to allow Appellant to retain a new expert or permit Dr. Mehlman to return to active practice. *Id.*

"[W]hether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court. It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one." *Wexler v. Hecht*, 847 A.2d 95, 98 (Pa. Super. 2004) (citations and quotation marks omitted). "Thus, we may reverse the trial court's decision regarding admission of expert testimony only if we find an abuse of discretion or error of law. Furthermore, because the issue

regarding an expert's qualifications under the MCARE Act involves statutory interpretation, our review is plenary." ***Frey***, 145 A.3d at 1177.

Section 512 of the MCARE Act provides that:

**(a) General rule.--**No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

**(b) Medical testimony.--**An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter *other than the standard of care* if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

**(c) Standard of care.--**In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

> (3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

40 P.S. § 1303.512(a)-(c) (emphasis added). The five-year time frame refers to the period measured from the time the expert testifies and not the time of the alleged negligence, and it requires active clinical practice or teaching. *See Weiner v. Fisher*, 871 A.2d 1283, 1288 (Pa. Super. 2005). With regard to the teaching requirement, the teaching experience may be part time, but a *de minimis* level of teaching is not sufficient to satisfy the statute. *Weiner*, 871 A.2d at 1290. The burden to establish an expert's qualifications under the MCARE Act lies with the proponent of the expert testimony. *Frey v. Potorski*, 145 A.3d 1171, 1178 (Pa. Super. 2016).

In the instant case, the court determined that Dr. Mehlman was not qualified under MCARE because he had not been engaged in active clinical practice or teaching within the previous five years. The *curriculum vitae* Dr. Mehlman provided stated that he had been on the staff of a hospital as of 2012, but his testimony established he had not worked in a clinical setting as of late 2010. Dr. Mehlman testified that he had seen and treated patients, but not in an emergency department or office. He testified he had lectured sporadically over the five-year time period but provided no documentary evidence that these lectures were regular or at a medical school. He could not state with certainty the dates or subjects of the lectures.

- 10 -

Accordingly, as the plaintiff bears the burden of proof to establish an expert's qualifications under the MCARE act, and Appellant did not meet that burden, Dr. Mehlman's testimony was properly excluded. **Frey**, 145 A.3d at 1178.

Next, we examine whether summary judgment was properly granted where Appellant could not provide expert medical testimony. Under Pennsylvania law,

> because medical malpractice is a form of negligence, to state a *prima facie* cause of action, a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm. With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation.

**Griffin v. Univ. of Pittsburgh Med. Ctr.-Braddock Hosp.**, 950 A.2d 996, 999–1000 (Pa. Super. 2008) (internal quotation marks and citation omitted). Summary judgment is properly granted in a case where the evidentiary record contains insufficient evidence to establish a *prima facie* case. **See Grandelli v. Methodist Hosp.**, 777 A.2d 1138, 1143 (Pa. Super. 2001). Thus, Appellant was required to have a medical expert testify on her behalf. Without an expert, she cannot establish a *prima facie* case, and summary judgment was properly granted. **Id.**

Before the lower court, Appellant argued that the court should have given her extra time to supplement Dr. Mehlman's *curriculum vitae* or to

- 11 -

retain a new expert.[6]   Appellant initially filed this action in April 2009. Despite being granted extensions of time, she did not retain Dr. Mehlman as a standard of care expert until September 2013.  Another two years passed from the time Appellant served Appellee with Dr. Mehlman's expert report until the time of his deposition, when the issues discussed, *supra*, were revealed.  Appellant had ample time during seven years of litigation in which to find another standard of care expert or to appropriately supplement Dr. Mehlman's *curriculum vitae* and/or testimony.  Further delay would be been prejudicial and unnecessary.

In light of our disposition of Appellant's first issue, her second issue is moot.  We decline to address it on the merits.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/3/2017

_____

[6] Appellant also argues that the trial court should have allowed her to develop the record as to Dr. Mehlman's teaching qualifications or to grant a continuance to permit Dr. Mehlman to return to active clinical practice.  As Appellant did not raise these arguments before the lower court or in her Pa.R.A.P. 1925(b) statement, they are waived.  *See* Pa.R.A.P. 302; Pa.R.A.P. 1925(b).