Rolanda K. CHANEY, Administratrix of the Estate of Jessica R. Kimple, Appellant,

v.

MEADVILLE MEDICAL CENTER, A Corporation, Glenn A. Bollard, M. D.

Superior Court of Pennsylvania.

Argued June 20, 2006.

Filed Oct. 19, 2006.

Reargument Denied Jan. 2, 2007.

Melissa B. Catello, Pittsburgh, for appellant.

Francis J. Klemensic, Erie, for Bollard, appellee.

Gary D. Bax, Erie, for Meadville Medical, appellee.

BEFORE: BOWES, PANELLA, and POPOVICH, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Rolanda K. Chaney, as administratrix of the estate of Jessica R. Kimple, appeals from the order entered on November 18, 2005, by the Court of Common Pleas of Crawford County, which granted the motions for summary judgment of Appellees, Meadville Medical Center ("MMC") and Glenn A. Bollard, M.D. After careful review, we affirm in part and reverse in part, and remand for further proceedings.

¶ 2 The certified record reveals the following factual background for this case. In early 2000, Kimple, an 18–year–old female, was diagnosed with pharyngitis and prescribed Amoxicillin by her primary care physician. After having exhausted the prescribed amount of antibiotics with no improvement, Kimple reported to the MMC Emergency Department on March 13, 2000. Kimple was suffering from a temperature of 103° F, and an irritating, non-productive cough. In the ER, Kimple was examined by Dr. Bollard, who diagnosed viral bronchitis and discharged her with instructions to use a Proventil inhaler and an over-the-counter cough medicine. No laboratory tests or x-rays were performed at this time.

¶ 3 Kimple returned home and followed Dr. Bollard's advice. However, two days later, Kimple returned to the ER, complaining of shortness of breath, muscular pain, stiffness, lethargy, lack of appetite, discoloration of the lips, mouth and fingernails, and a temperature of 102° F. X-ray examinations revealed diffuse interstitial infiltrates, leading to a provisional diagnosis of pneumonia and severe hypoxia. Kimple was subsequently admitted to MMC for further care.

¶ 4 Kimple was placed on a 100% non-rebreathing mask and was evaluated by a pulmonologist. Kimple ultimately required intubation, however, it is not clear from the record exactly when this treatment was initiated. Kimple remained on ventilation until March 17, 2000 at approximately 9:00 p.m., when she became cyanotic and unable to oxygenate. Despite several attempts at resuscitation, Kimple died shortly thereafter.

¶ 5 On June 12, 2002, Kimple's estate filed a malpractice complaint against Dr. Bollard and MMC, as well as Lucille I. Kirchner, M.D., and William D. Sullivan, M.D.[1] Thereafter, Dr. Bollard and MMC filed preliminary objections to the estate's complaint. Kimple's estate subsequently filed an amended complaint, to which Dr. Bollard and MMC again filed preliminary objections. By order dated March 5, 2003, the trial court sustained the preliminary objections in part, thereby striking certain

---

1. Dr. Kirchner and Dr. Sullivan were dismissed from this case by order dated September 26, 2005. As Kimple's estate raises no issue with respect to the order dismissing these two defendants, we will avoid any further reference to Dr. Kirchner and Dr. Sullivan.

paragraphs and subparagraphs in the Estate's amended complaint.

¶ 6 Discovery ensued, and, on July 1, 2005, the trial court ordered the Estate to produce an expert report in support of its complaint. The Estate produced the expert report of William Stuart, M.D., an emergency room physician, on August 8, 2005. By August 15, 2005, both Dr. Bollard and MMC had filed motions for summary judgment. Thereafter, on September 14, 2005, the Estate filed a Petition for Rule to Amend Complaint. The trial court, on November 18, 2005, denied the petition and granted both Dr. Bollard's and MMC's summary judgment motions. This timely appeal followed.

¶ 7 On appeal, the Estate argues that it should have been given permission to amend because the proposed amendments were merely amplifications of facts already plead in the amended complaint, i.e., expanded specifications of the date that Dr. Bollard was negligent as well as the definitive cause of death of Kimple. The Estate also contends that the trial court erred in granting the motions for summary judgment despite the existence of factual issues regarding whether Kimple's death was caused by the professional negligence of Dr. Bollard as alleged and explained in the Estate's proffered expert's report.[2] Lastly, the Estate also attacks the summary judgment by arguing that the trial court employed an erroneous standard of review and failed to view the record in the light most favorable to the Estate, which was the non-moving party.

¶ 8 The first issue we must address concerns the trial court's decision to deny the petition to amend. Amendments to pleadings are permitted at any time, including before, during and after trial. PA.R.C.P., Rule 1033, 42 PA. Cons.Stat. Ann.; *Winterhalter v. West Penn Power Co.,* 355 Pa.Super. 17, 512 A.2d 1187, 1189 (1986). In discussing Rule 1033, this Court has stated:

> Although no absolute right to amend exists, the courts of this Commonwealth have liberally construed the principle embodied in this rule. Consequently, courts have allowed amendments of pleadings *at any time,* as provided by the specific language of this statute.

*Id.* at 1189 (emphasis in original). Leave to amend pleadings is to be liberally granted. *Stalsitz v. Allentown Hospital,* 814 A.2d 766, 776 (Pa.Super.2002), *appeal denied,* 578 Pa. 717, 854 A.2d 968 (2004). A party is to be given leave to amend its pleadings when allowing the amendment will not unduly prejudice or surprise the adverse party. *Somerset Community Hosp. v. Allan B. Mitchell & Associates, Inc.,* 454 Pa.Super. 188, 685 A.2d 141, 147 (1996). Undue prejudice in this analysis has been defined as something more than a detriment to the other party, as any amendment would likely have the effect of harming the adverse party's interests. The policy underlying this rule of liberal leave to amend is to insure that parties get to have their cases decided on the substantive case presented, and not on legal formalities. *Laursen v. General Hospital of Monroe County,* 494 Pa. 238, 244, 431 A.2d 237, 240 (1981); *Gallo v. Yamaha Motor Corp., U.S.A.,* 335 Pa.Super. 311, 484 A.2d 148, 150 (1984).

¶ 9 However, "[a]n amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant." *Stalsitz,* 814 A.2d at 776 (citation omitted).

**2.** The nature of the Estate's claim against MMC is vicarious liability based upon the professional negligence of Dr. Bollard.

Only if the proposed amendment merely amplifies, as opposed to altering, the cause of action already averred, will it be allowed if the statute of limitations has run. *Id.*

■ ¶ 10 The statute of limitations for claims arising in conjunction with Kimple's death ended on March 17, 2002. 42 PA. CONS.STAT. ANN. § 5524. The Estate filed the instant petition to amend on September 14, 2005, more than three years after the statute had run. As the Estate does not argue that the discovery rule or any other exception applies, we must determine whether the Estate's requested amendments constituted a new cause of action.

¶ 11 The amendments to the amended complaint proposed by the Estate were as follows:

> The treatment rendered by Defendant Bollard on March 13, 2000 caused and/or increased the risk of the death of the patient by a spontaneous tension pneumothorax.
>
> On March 17, 2000, the patient [Kimple] came under the care of Defendant Bollard who failed to adequately treat the patient relative to her development of a spontaneous tension pneumothorax;
>
> On March 17, 2000, the patient developed a spontaneous tension pneumothorax as a result of acute respiratory distress syndrome, acute interstitial pneumonia, and/or eosinophilic pneumonia, which resulted in her death;
>
> As a result of Defendant Bollard's negligent treatment of the patient on March 17, 2000 in failing to timely place a large bore needle/catheter, or other pressure relieving device, into her left pleural space, the patient was caused to die from a spontaneous tension pneumothorax.

Petition to Amend, filed 9/14/2005, at ¶ 5. These amendments accomplish two separate goals. The first paragraph specifies that the exact cause of Kimple's death was spontaneous tension pneumothorax. The last three paragraphs, taken together, specify that Dr. Bollard's treatment of Kimple's spontaneous tension pneumothorax was negligent.

¶ 12 In contrast, the Estate's amended complaint only explicitly identifies Dr. Bollard in conjunction with his March 13, 2000 misdiagnosis. No averment in the amended complaint identifies Dr. Bollard as being involved with Kimple's care during the March 15–17, 2000 time period. As such, a fair reading of the amended complaint does not include an averment of malpractice against Dr. Bollard for the treatment he administered to Kimple on March 17, 2000. Accordingly, the final three paragraphs of the Estate's proposed amendment constitute an entirely new allegation of negligence against Dr. Bollard personally, and not just an amplification of the theory contained in the amended complaint. As explained by the current President Judge of the Superior Court, the Honorable Kate Ford Elliott, in *Reynolds v. Thomas Jefferson University Hospital,* 450 Pa.Super. 327, 676 A.2d 1205 (1996), *appeal denied,* 549 Pa. 703, 700 A.2d 442 (1996):

> A new cause of action does arise, however, if the amendment proposes a different theory or a different kind of negligence than the one previously raised *or if the operative facts supporting the claim are changed.* 2B Anderson *Pennsylvania Civil Practice,* §§ 1033.28 and 1033.31.

676 A.2d at 1210 (quotation omitted) (emphasis in original). Therefore, the trial court did not err in denying the proposed amendment with respect to the final three paragraphs.

■ ¶ 13 On the other hand, to the extent that the amendments more specifical-

ly define the exact cause of Kimple's death, we conclude that the trial court did err. Such amendments do not allege a new theory of liability. To the contrary, the underlying averments of malpractice were unchanged. The amendments merely clarified the causal chain that connected the breach(es) of duty to Kimple's death. These circumstances are similar to a complaint that a car crash victim was killed by the defendant's negligent driving. A later amendment which specifies that the victim died from loss of blood due to the trauma inflicted by the crash would not constitute a new cause of action. Rather, the amendment merely amplifies the *factual background.* Accordingly, we conclude that the trial court erred in prohibiting the Estate from amending the pleadings to include the allegation that the treatment rendered by Dr. Bollard *on March 13, 2000* resulted in Ms. Kimple's death by spontaneous tension pneumothorax.[3]

¶ 14 This decision renders much of the trial court's reasoning in support of its grant of summary judgment moot. The trial court's opinion engages in a lengthy analysis comparing the definitions of "pneumothorax," "adult respiratory distress syndrome," "pneumonia," and "eosinophilia," to support its determination that the identification of spontaneous tension pneumothorax constituted a new cause of action.[4] However, as we have concluded that the Estate's specification of spontaneous tension pneumothorax as the cause of Kimple's death did no more than amplify the factual background, the trial court's analysis is fundamentally flawed. In fact, the trial court's own statement indicates the error in its reasoning: "It is not very clear that the spontaneous tension pneumothorax suffered by Kimple was simply a mechanism which brought about her death by one of the conditions alleged by the Plaintiff in her Amended Complaint." Trial Court Opinion, 11/18/2005, at 9. In light of our policy resolving all doubts against the moving party, the existence of a genuine issue of material fact, such as the causative factor resulting in Ms. Kimple's death, without question rendered summary judgment inappropriate.

■ ¶ 15 Accordingly, having determined that the Estate should have been allowed to amend the complaint to specify the mechanism of Kimple's death, we find that the trial court improperly granted summary judgment in favor of Dr. Bollard and MMC. Of course, the scope of our review of a trial court's order granting a motion for summary judgment is plenary, meaning that we are not bound by the trial court's conclusions of law, but may reach our own conclusions. *Grandelli v. Methodist Hospital,* 777 A.2d 1138, 1143–44

---

3. As will be further discussed *infra,* we also conclude that the trial court erred in prohibiting the Estate from amending the pleadings to include the allegation that the treatment rendered by Dr. Bollard *on March 17, 2000* resulted in Ms. Kimple's death by spontaneous tension pneumothorax, in relation to its cause of action against MMC.

4. We note that the trial court used materials from outside the record to supply these definitions. Medical terms, unlike statutory terms, are not subject to legal construction, and oftentimes require expert testimony to be understood. The trial court here apparently took judicial notice of the definitions because neither Dr. Stuart, nor any other expert, subscribed to the materials or definitions used by the trial court. The use of these definitions was without compliance with Rule 201 of the Pennsylvania Rules of Evidence, PA.R.E., Rule 201(e), 42 Pa. Cons.Stat. Ann. (entitling parties to an opportunity to be heard on the issue of the propriety of taking judicial notice). Furthermore, the taking of judicial notice of complex medical facts which were in issue was criticized by the Supreme Court in *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 508, n. 12, 267 A.2d 867, 871, n. 12 (1970).

(Pa.Super.2001). Summary judgment is properly granted as a matter of law

> if, after the completion of discovery relevant to the motion . . . , an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P., Rule 1035.2, 42 PA. CONS.STAT. ANN. The adverse party who bears the burden of proof at trial must come forward with evidence essential to preserve his cause of action. *Id.*, Note. If such a party fails to produce such essential evidence, the moving party is entitled to judgment as a matter of law. *Grandelli*, 777 A.2d at 1144 (citation omitted).

¶ 16 As stated above, we must review the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *Id.* We may only disturb the trial court's grant or denial of summary judgment upon an error of law or an abuse of discretion. *Id.*

> An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

*Harman v. Borah*, 562 Pa. 455, 468, 756 A.2d 1116, 1123 (2000) (citations omitted).

■ ¶ 17 With respect to the Estate's claims against Dr. Bollard, the trial court opined:

> [The Estate's] Amended Complaint allegations have nonetheless not been supported. [The Estate's expert] Dr. Stuart does not conclude that the asserted March 13, 2000 negligence of Defendant Bollard actually caused Kimple's death on March 17, 2000. Dr. Stuart notes in his report that "[i]n my opinion the below average/applicable standard of care rendered to Jessica Kimple by Dr. Bollard on March 13th placed Jessica at increased risk, and the below average/applicable standard of care rendered on March 17th proximally caused Jessica Kimple's death." However, Dr. Stuart also concludes that "if her spontaneous pneumothorax had been appropriately relieved by Dr. Bollard, within a reasonable degree of medical certainty, her pneumonia would have continued to improve, and she would have lived." This suggests that even if the asserted March 13, 2000 negligence of Defendant Bollard did increase some risk to Kimple, it ultimately was another condition, the spontaneous tension pneumothorax, which occurred on March 17, 2000 that caused Kimple's death. . . . Finally, Dr. Stuart has simply not made it sufficiently clear that the greater risk of harm at which he claims Defendant Bollard placed Kimple on March 13, 2000 specifically implicates the eventual occurrence on March 17, 2000 of a spontaneous tension pneumothorax.

Trial Court Opinion, 11/18/2005, at 13–14. It is clear from this passage that the trial court evaluated the evidence of record in an improper light. As noted previously, in evaluating the evidence before it on the summary judgment motion, the trial court was required to review the record in the light most favorable to the Estate, and resolve all doubts against Dr. Bollard. In his expert report, Dr. Stuart opined that Dr. Bollard had failed to perform diagnostic studies on March 13, 2000, which, in turn, resulted in a failure to reveal the presence of pneumonia. Dr. Stuart continued his analysis of the treatment rendered by concluding that "the delay in diagnosis caused by Dr. Bollard's below average standard of care, within a reasonable de-

gree of medical certainty, placed Jessica Kimple at greater risk of harm."

¶ 18 Accordingly, the trial court erred in placing the burden upon the Estate to make it "clear" that Dr. Bollard's alleged malpractice on March 13, 2000 "specifically" implicated Kimple's eventual death. Such considerations go to the weight of Dr. Stuart's expert opinion, not its sufficiency to establish a cause of action. Of equal concern is the trial court's resolution of legitimate and material trial issues of whether Ms. Kimple developed spontaneous tension pneumothorax, and eventually died, as a result of the alleged negligence of Dr. Bollard. Therefore, we conclude that the trial court erred in granting Dr. Bollard's motion for summary judgment with respect to the Estate's claim based upon Dr. Bollard's March 13, 2000 misdiagnosis.

■ ¶ 19 Next, we turn to the trial court's decision to grant MMC's motion for summary judgment. The Estate concedes that its claim against MMC is based upon vicarious liability for the actions of MMC's agents. Appellant's Brief, at 4. The Estate's amended complaint identifies MMC's agents as "nurses, *doctors, including the individual Defendants*, attendants, technicians, and other servants, agents and employees . . . acting in and about their respective duties as servants, agents and employees in [MMC's] behalf and within the scope of their authority." Amended Complaint, at ¶ 17 (emphasis added). The Estate averred that this broad group of agents acted negligently in

- "disregarding, ignoring or not sufficiently acting upon the patient's signs and/or symptoms"

- "failing to recognize that [Kimple] was in acute distress" and

- "refusing to treat [Kimple] when [Kimple] was exhibiting signs and/or symptoms which in the exercise of sound medical judgment should have indicated severe illness."

*Id.*, at ¶ 33(h), (n), (p).[5]

¶ 20 These averments of malpractice are not explicitly limited to any particular date, nor does a fair reading of the amended complaint as a whole lead to such a conclusion. Rather, the amended complaint clearly put MMC on notice that the Estate was complaining about the care rendered by MMC's agents from March 13th to 17th.

¶ 21 Dr. Stuart's expert report identifies Dr. Bollard's actions on March 17, 2000 as being below the appropriate standard of care and a contributing factor which led to Ms. Kimple's death. As noted previously, this opinion exceeds the scope of the averments against Dr. Bollard personally in the amended complaint. However, it is well within the averments against MMC's agents, etc., as described above. Accordingly, the trial court erred in concluding that Dr. Stuart's expert report did not support a cause of action against MMC contained in the amended complaint.

¶ 22 While this result seems to contradict our conclusion, *supra,* that the trial court correctly denied the proposed amendment to the extent that it specified Dr. Bollard's actions on March 17, 2000, it is important to remember the policies underlying this technical application of our Rules of Civil Procedure. The Estate was properly barred from introducing a new theory of the case against Dr. Bollard personally, as it had not put him on no-

---

**5.** Subparagraphs (h), (n) and (p) of the amended complaint were not stricken by the trial court's order of March 5, 2003.

tice, before the statute of limitations had expired, that his actions on March 17, 2000 constituted the basis of its case against him. In contrast, MMC was on notice, before the expiration of the statute of limitations, that the conduct of its agents on March 17, 2000, was relevant to the Estate's case against the medical center. As such, although we agree that the trial court properly denied the final three paragraphs of the Estate's proposed amendment as a foundation for a new cause of action against Dr. Bollard, we also conclude that these same allegations, supported by evidence in the record and referred to by Dr. Stuart in his expert report, may form a theory of liability against MMC. Accordingly, we must affirm the order in part, reverse it in part, and remand for further proceedings.

¶ 23 Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.