# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andres Prieto,                :
          Appellant       :
                             :
         v.                :     No. 1517 C.D. 2024
                             :     Argued: February 4, 2026
Police Officer Daniel Mammula,    :
Police Officer Dedos, Police Officer   :
Douglas Miller, Police Officer       :
Michael Pezzeca, Police Sgt. Vincent   :
Perone, Police Sgt. James Graber,     :
and the City of Philadelphia        :

BEFORE:    HONORABLE MICHAEL H. WOJCIK Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT              FILED: April 2, 2026

Andres Prieto (Prieto) has appealed orders of the Court of Common Pleas of Philadelphia County (trial court) that granted summary judgment to police officers Daniel Mammula, Dedos, Douglas Miller, Michael Pezzeca, Vincent Perone, and James Graber (collectively, Officers). The trial court also denied Prieto's petition for leave to amend complaint. On appeal, Prieto argues that the trial court erred in these two rulings. Upon review, we affirm.

## Background

On March 28, 2023, Prieto filed a complaint against Officer Daniel Mammula (Mammula), several John Doe defendants, and the City of Philadelphia (City)[1] (Complaint). In Count One, the Complaint alleged that on February 1, 2022,

---

[1] The City filed preliminary objections. The trial court sustained the preliminary objections and dismissed the City from suit with prejudice.

at approximately 9:00 p.m., at or near the intersection of 34th Street and Haverford Avenue in the City, Mammula and the John Doe defendants stopped Prieto to arrest him. "After stopping and handcuffing [Prieto]," Mammula and the John Doe defendants "beat [Prieto], kicking him and punching him several times and causing him to have [] injuries[]" including "facial lacerations and a fractured sternum which required surgery." Complaint, ¶¶7, 9; Reproduced Record at 6a-7a (R.R. __). The Complaint alleged that at the time of the incident, Prieto "did not resist the police officers in any way nor did he do anything that justified the beating described above." Complaint, ¶8, R.R. 7a. The Complaint asserted that Mammula and the John Doe defendants committed assault and battery. Complaint, ¶10, R.R. 7a. Count I sought compensatory damages. Count II sought punitive damages.

On April 25, 2023, Prieto served Mammula with interrogatories and requests for production of documents including, but not limited to, "[a]ny and all photographs or diagrams in any way related to this incident(s) described in [the C]omplaint[,]" and "[a]ny and all records concerning the arrest or detention of [Prieto] on or about February 1, 2022 to February 2, 2022 which arrest/detention is the subject of the instant lawsuit." R.R. 49a-50a. The request defined "document," in relevant part, as "any means by which information is recorded or retained, including, without limitation, originals, non-identical copies, drafts, or electronic or computer data storage." R.R. 49a.

Upon not receiving answers, Prieto filed a motion to compel discovery, which was granted by the trial court on July 17, 2023. Still, Mammula did not answer the discovery. On August 21, 2023, Prieto filed a motion for sanctions for failure to abide by discovery orders. The trial court granted the motion on September 7, 2023.

2

When Mammula still had not responded to discovery, Prieto filed a motion for further sanctions. On October 4, 2023, Mammula, through counsel, sent discovery materials to Prieto. However, these discovery materials did not include body camera videos.

On October 18, 2023, Prieto filed an amended complaint (Amended Complaint), identifying the John Doe defendants by their correct names, including James Graber (Graber). The counts and allegations remained the same.

On February 22, 2024, Officers' counsel sent Prieto Graber's body camera videos of the incident covered in the Amended Complaint. On August 30, 2024, Graber and the other Officers filed motions for summary judgment. The record showed that on February 1, 2022, Officers responded to a 911 call reporting a "person with a gun" at an apartment building located at 3416 Haverford Avenue. Graber Motion for Summary Judgment, ¶7; R.R. 103a. The video footage showed that, upon entering the premises, Graber observed Prieto "yelling, screaming[,]" "banging on numerous apartment doors[,]" and holding an unidentified object in his hand. *Id*., ¶¶8, 11; R.R. 103-04a. Graber announced himself as a police officer and asked Prieto to calm down and stop moving, but Prieto continued to run down the apartment hallway, yelling "unintelligible" words. *Id*., ¶¶10, 12; R.R. 104a. Graber drew his taser and followed Prieto, who exited the apartment building.

The Amended Complaint alleged that the Officers kicked and punched Prieto several times, thereby injuring him. Amended Complaint, ¶9; R.R. 80a. However, the video footage showed that Graber used his taser, causing Prieto to fall "into the snow on the sidewalk[.]" Graber Motion for Summary Judgment, ¶21; R.R. 105a. Prieto continued to resist after the backup officers arrived, and Graber tased him a second time. *Id*., ¶26; R.R. 106a. The officers then "rolled [Prieto] over

3

on his stomach and handcuffed him." *Id*., ¶27; R.R. 106a. Graber's motion asserted that summary judgment was appropriate because the body camera showed that the police did not kick or punch Prieto, "which is the only claim for excessive force asserted in the complaint." *Id*., ¶35; R.R. 107a. Because there was no genuine issue of material fact with respect to the alleged use of excessive force, Graber asked that Prieto's claims against him be dismissed with prejudice. *Id*.

On September 26, 2024, Prieto filed a petition for leave to amend complaint. In the petition, Prieto alleged that he was "under the influence at the time of the incident and believed he had been punched and kicked because of the severity of his injuries[.]" Petition to Amend, ¶3; R.R. 253a. After viewing the police body camera videos, Prieto learned that Graber "tased him several times without reasonable basis, thereby causing [Prieto] to be thrown to the ground and striking hard ice causing the fracture." *Id*. The amendment to the Amended Complaint would provide "accurate allegations of the unlawful acts of [the Officers] which caused [Prieto's] injuries." Petition to Amend, ¶4; R.R. 253a.

On October 21, 2024, the trial court denied Prieto's petition for leave to amend complaint. On the same date, the trial court granted Graber's and the other Officers' motions for summary judgment and dismissed all claims against the defendants with prejudice.

Prieto appeals to this Court.

**Trial Court Opinion**

In its Pa.R.A.P. 1925(a) opinion, the trial court explained its rationale as follows. Motions to amend pleadings are to be granted liberally, but this does not mean that litigants have free rein to alter their theories of the case at any point in the litigation. "Only if the proposed amendment merely amplifies, as opposed to

4

altering, the cause of action already averred, will it be allowed if the statute of limitations has run." Trial Court Pa.R.A.P. 1925(a) Op. at 2; R.R. 548a (quoting *Chaney v. Meadville Medical Center*, 912 A.2d 300, 304 (Pa. Super. 2006)). Here, the statute of limitations had run on February 1, 2024. However, Prieto's proposed amendment did not amplify but, rather, "attempted to alter the claim from an alleged beating comprised of punches and kicks (which admittedly did not occur) to, for the first time alleging that [Prieto] was excessively and unlawfully tased[.]" Trial Court Pa.R.A.P. 1925(a) Op. at 2; R.R. 548a. The trial court also took issue with Prieto's argument that Officers' counsel did not provide him with Graber's body camera video footage until February 15, 2024, after the statute of limitations had run. The trial court found it critical that Prieto waited more than six months after viewing the video to seek leave to file a second amended complaint to include new allegations related to the taser. Even so, Prieto was not hindered in his ability to ascertain the facts about the incident in a timely fashion.

As to the grant of Graber's and the other Officers' motion for summary judgment, the trial court found that the record demonstrated no genuine issue of material fact. Prieto alleged that he was punched and kicked; by his own admission and the video footage, this did not happen. The video footage showed that at the time of Graber's arrival at the scene, Prieto was shouting incoherently and banging on apartment doors; ran away from Graber; and even after fleeing and being tased once, continued to flail, shout, and prevent Officers from handcuffing him. This behavior, in the trial court's view, "prompted minimal additional uses of the taser, and [was] no[t] treatment that can fairly be deemed excessive or illegal." Trial Court Pa.R.A.P. 1925(a) Op. at 4; R.R. 550a. As a matter of law, therefore, Graber was

entitled to judgment on Prieto's claim that Graber used excessive force to apprehend Prieto.

**Appeal**

On appeal,[2] Prieto raises two issues for our review. First, Prieto argues that the trial court erred in denying his petition for leave to amend complaint. Second, Prieto argues that the trial court erred in granting Graber's motion for summary judgment.[3] We address these two issues *seriatim*.[4]

**I. Petition to Amend Complaint**

First, Prieto argues that the trial court erred in denying his petition for leave to amend complaint. The amendment should have been permitted because Officers, through their counsel, concealed the facts until the statute of limitations had passed, thereby making it impossible for Prieto to amend his complaint before the running of the statute. Officers' counsel certainly knew that the incident did not occur as alleged in the Amended Complaint but, rather, involved tasings by Graber. Officers' counsel also would have learned that Officers' body cameras were activated during the incident. The video footages were accessible to Officers but unknown to

---

[2] "An order of a trial court granting summary judgment may be disturbed by an appellate court only if the court committed an error of law [ ]; thus, [an appellate court's] standard of review is *de novo*, and [the] scope of review is plenary." *LJL Transportation, Inc. v. Pilot Air Freight Corporation*, 962 A.2d 639, 647 (Pa. 2009) (internal citations omitted).

[3] Prieto does not challenge the summary judgment granted to the other Officers, but only to Graber. Prieto Brief at 20. Thus, the issues on appeal concern only Graber.

[4] Graber filed an application to strike two news articles from the reproduced record that were attached to Prieto's statement of matters complained of on appeal. Graber contends that these news articles were not before the trial court at the time it ruled on the motion for summary judgment or Prieto's motion for leave to amend his complaint. "[A]n appellate court may not consider documents that are not part of the certified record." *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 472 (Pa. Cmwlth. 2018). The certified record includes these news articles as attachments, Exhibit A, to Prieto's statement of matters complained of on appeal. Accordingly, we deny the motion to strike these documents.

Prieto. Officers' counsel also should have known, from the interrogatories and request for production of documents served on April 25, 2023, that body camera videos, which showed the entire incident, were a vital part of the discovery request. However, Officers' counsel did not turn the video footage over to Prieto until February 22, 2024, four months after sending the other discovery materials and after the statute of limitations had run. Prieto was under the influence at the time of the incident and did not remember being tased. He was unaware of the facts until he viewed the body camera video. Prieto asserts that because Officers intentionally concealed the video, they are "estopped from invoking the bar of the statute of limitations." Prieto Brief at 21 (citing *Schaffer v. Larzelere*, 189 A.2d 267, 269 (Pa. 1963)).

Prieto also argues that amending the complaint would not cause undue prejudice because the Officers knew from the outset of litigation that Prieto had not been punched or kicked but was tased. Although the trial court asserted that the amendment should have been filed sooner, it was impossible for Prieto to file it before the running of the statute of limitations because he did not know that the video existed. Prieto argues that the appropriate way to handle his petition to amend is to allow the Officers more time to respond to the amended allegations. Prieto Brief at 29. Instead, the trial court dismissed the entire case.

Graber counters that the trial court properly denied Prieto's petition for leave to amend complaint as "[p]rejudicially [l]ate" because Prieto waited until after the close of discovery; after the expert report deadline; and after the filing of motions for summary judgment in an "attempt to present an entirely new theory of liability." Graber Brief at 21. This was prejudicial to Graber because he had premised his

defense on Prieto's contention that he was punched or kicked. He did not retain an expert to opine on the proper use of a taser.

Graber contends that Prieto's proposed amendment was barred by the statute of limitations because it "put forward entirely new facts on which to premise liability." Graber Brief at 25. Graber and the other Officers did not conceal the facts of the incident, of which Prieto has firsthand knowledge. That he misremembered the incident due to his voluntary, self-intoxication on illegal drugs cannot toll the statute of limitations. *Schaffer*, 189 A.2d 267, is inapposite because that case involved a wrongful death suit against several doctors and the hospital; the plaintiff was not present when the alleged medical malpractice occurred and, thus, lacked knowledge of the decedent's care. By contrast, here, Prieto was present at his own arrest. The discovery rule turns on whether a person "reasonably should have discovered" the injury. Graber Brief at 33 (quoting *Pocono International Raceway, Inc. v. Pocono Produce, Inc*., 468 A.2d 468, 471 (Pa. 1983)). "A reasonable person is not an *intoxicated* person," and Prieto should not be allowed to use his own intoxication to invoke the discovery rule. Graber Brief at 33-34 (citing *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997) (discovery rule did not toll running of statute of limitations during 20 years of the plaintiff's repressed memory)) (emphasis in original).

Graber asserts that he did not conceal the video footage. The discovery requests were directed at Mammula, not him, and he was no longer employed by the City when he was joined to the suit as a defendant. He had no access to the video footage at that time.

In the alternative, Graber argues that Prieto's amendment is futile because the video footage reveals that the force used was not excessive. Graber had

8

reasonable suspicion to stop Prieto because, as shown in the video, the latter was screaming, running down the apartment complex hallway, and refusing to comply with his commands. The video also showed that Prieto was holding an unidentified object in his hand. Based on the police call and Prieto's behavior, and not knowing what Prieto was holding, Graber deployed his taser. The trial court found the force used by Graber was reasonable as a matter of law. A motion for leave to amend "is properly refused where it appears to be a reasonable possibility that the amendment will be futile." Graber Brief at 20 (quoting *Stempler v. Frankford Trust Co.*, 529 A.2d 521, 524 (Pa. Super. 1987)). In *Stempler*, homeowners brought a negligence action against a mortgagee lender, to whom the common pleas court granted a demurrer. On appeal, the Superior Court affirmed and held that no cause of action in negligence existed where the homeowners alleged no duty of the mortgagee lender to inspect their home. Because a cause of action did not exist, the common pleas court acted within its discretion in denying a pleading amendment that would be futile.

"Amendments to pleadings are permitted at any time, including before, during, and after trial," and they are to be liberally granted. *Chaney*, 912 A.2d at

303 (citing Pa.R.Civ.P. 1033[5]).[6]  Leave to amend pleadings should be allowed where it will not "unduly prejudice or surprise the adverse party."  *Id*.  It has further been explained as follows:

> Undue prejudice in this analysis has been defined as something more than a detriment to the other party, as any amendment would likely have the effect of harming the adverse party's interests.  The policy underlying this rule of liberal leave to amend is to ensure that parties get to have their cases decided on the substantive case presented, and not on legal formalities.

*Id*. (citations omitted).  However, "[a]n amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant."  *Id*. (quoting *Stalsitz v. Allentown Hospital*, 814 A.2d 766, 778 (Pa. Super. 2002)).  "Only if the proposed amendment merely amplifies, as opposed to

---

[5] It states, in pertinent part, as follows:

> (a) General Rule.  A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading.  The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense.  An amendment may be made to conform the pleading to the evidence offered or admitted.
>
> . . . .
>
> (c) John Doe Defendants.  An amendment substituting the actual name of a defendant for a Doe designation as provided in Rule 2005 relates back to the date of the commencement of the action if, within the time provided by Rule 401 for service, the defendant named by the amendment has received actual or constructive notice of the commencement of the action such that it will not be prejudiced in maintaining a defense on the merits and the defendant knew or should have known that the action would have been brought against it but for lack of knowledge of the defendant's actual name.

Pa.R.Civ.P. 1033(a), (c).

[6] "Superior Court decisions are generally not binding on this Court, and they offer persuasive precedent only when they address analogous issues."  *Pioneer Construction Company, Inc. v. Insight Pharmaceuticals*, 338 A.3d 234, 252 n.28 (Pa. Cmwlth. 2025).

altering, the cause of action averred, will it be allowed after the statute of limitations has run." *Chaney*, 912 A.2d at 304. Finally, "[t]he decision of the trial court to deny a motion to amend a complaint "will not be disturbed absent an abuse of that discretion." *Ferraro v. McCarthy–Pascuzzo,* 777 A.2d 1128, 1132 (Pa. Super. 2001).

Here, the proposed amendment addressed the causation of Prieto's injuries, which did not result from punching and kicking. Rather, Graber's tasing caused him to fall on hard ice. This does not alter the cause of action asserted in the Amended Complaint. In *Kuisis v. Baldwin-Lima-Hamilton Corporation*, 319 A.2d 914 (Pa. 1974), the Supreme Court held that the plaintiff's strict liability claim was timely filed even though the allegations about the defectively manufactured crane were added by amendment after the statute of limitations had run. The Supreme Court found that the original complaint contained allegations sufficient to state an implicit strict liability claim. Here, regardless of whether Graber punched and kicked Prieto, or tased him, the Amended Complaint still asserts a battery or assault claim. The cause of action remains the same.

*Chaney*, 912 A.2d 300, on which the trial court relied, is distinguishable. In that case, the decedent's estate brought a medical malpractice action against the emergency care physician for a misdiagnosis and against the medical center for its treatment of the decedent. After the defendants moved for summary judgment, the estate petitioned to amend the pleading to include a new theory of liability against the physician and for the cause of death. The common pleas court denied the petition, and the Superior Court reversed in part and affirmed in part. The amended complaint

> only explicitly identifies Dr. Bollard in conjunction with his March 13, 2000 misdiagnosis. No averment in the amended complaint identifies Dr. Bollard as being involved with [the decedent's] care during the March 15-17, 2000 time period.

11

*Id*. at 304. Because the proposed amendments "constitute[d] an entirely new allegation of negligence against Dr. Bollard personally, and not just an amplification of the theory contained in the amended complaint[,]" the Superior Court held those amendments were properly denied. *Id*. On the other hand, the Superior Court allowed the proposed amendments to specify the cause of death because "the underlying averments of malpractice were unchanged." *Id*. at 305.

Here, unlike *Chaney*, the Amended Complaint contained allegations of battery against Graber personally. Prieto's proposed amendment merely clarifies that the injuries resulted from tasing, not from punching or kicking; it does not change the nature of the underlying claim. The trial court erred in denying Prieto's petition for leave to amend the Amended Complaint. However, for the reasons that follow, we conclude that this error does not warrant reversal.

## II. Summary Judgment

Prieto argues, next, that the trial court erred in granting summary judgment to Graber. The trial court concluded that Prieto could not prove Graber punched and kicked Prieto and, further, Graber's use of force was justified because the video footage shows that Prieto "was shouting incoherently and banging on apartment doors[.]" Trial Court Pa.R.A.P. 1925(a) Op. at 3. Prieto disputes banging on apartment doors. Further, Graber reported to the assigned detective that he tased Prieto because the latter "became hostile and combative and rushed toward him[.]" Prieto Brief at 31 (citation omitted). At his deposition, however, Graber denied that Prieto rushed toward him. Prieto argues that the facts are in dispute and require resolution by a jury.

In response, Graber argues that Prieto's characterization of the facts does not create a genuine dispute of material facts. The video footage shows the

12

events of the arrest, and Prieto cannot offer contradictory testimony about what it shows. Graber's statement to the detective is irrelevant. The video footage shows that the force used by Graber during the arrest was reasonable and prompted by Prieto's resistance to arrest.

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 (Pa. 2002); *see also* Pa.R.Civ.P. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. *Toy v. Metropolitan Life Insurance Company*, 928 A.2d 186, 195 (Pa. 2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from doubt." *Id*. On appellate review, then,

> an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. [] But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. [] This means we need not defer to the determinations made by the lower tribunals.

*Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902–03 (Pa. 2007) (internal citations omitted). In summary judgment appeals, this Court reviews the entire record. *Id*. at 903.

The question of whether an officer used excessive force requires a determination of whether the force used was objectively reasonable in light of the surrounding facts and circumstances. *Moody v. Philadelphia Housing Authority*, 673

A.2d 14, 19 (Pa. Cmwlth. 1996). Relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, *and whether he is actively resisting or attempting to evade arrest by flight*." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added). Other factors include "the duration of the [officer's] action, *whether the action takes place in the context of effecting an arrest*, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)) (emphasis added). In addition, the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. If a police officer uses reasonable force in making a lawful arrest, he cannot be liable for assault and battery. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293-94 (Pa. 1994).

Here, the record, on which Graber and the other Officers filed their summary judgment motions, included Graber's body camera footage. The trial court could not disregard that video or credit witnesses who might offer a competing version of the event. *Scott v. Harris*, 550 U.S. 372, 379-81 (2007). When video recordings of the event at issue "blatantly contradict" the non-movant's version of the facts, the court need not adopt the non-movant's version of the facts for purposes of ruling on a summary judgment motion. *Sellers v. Township of Abington*, 106 A.3d 679, 690 (Pa. 2014) (citing *Scott*, 550 U.S. at 380).

State and federal court decisions are instructive. In *Sellers*, 106 A.3d 679, a passenger in a vehicle fleeing from a police officer was killed. His estate brought a wrongful death and survival action against the township and the police department. The common pleas court granted summary judgment in favor of the

14

police department, and this Court affirmed. The Supreme Court, in affirming this Court, noted that the estate's version of events differed greatly from that of the police officer. The estate claimed that the police officer was driving in the opposite direction as the driver and therefore likely saw decedent and the driver in the vehicle. However, the in-car camera recording contradicted this assertion, revealing that the officer was driving behind and in the same direction when he initiated the pursuit. The Supreme Court held that the trial court properly granted summary judgment based on the camera recording.

By contrast, in *White v. City of Vineland*, 500 F.Supp. 3d 295 (D. N.J. 2020), the estate brought, *inter alia*, claims under 42 U.S.C. §1983 against the city, police chief, and individual officers, for excessive force and false arrest, which allegedly resulted in the death of the arrestee. The defendants moved for summary judgment. The record included both witness testimony and a police body camera recording. The witnesses disputed the events that led to the decedent's arrest; whether the decedent resisted the arrest; whether the decedent, once on the ground, was reaching for the police officer's gun; and whether the decedent resisted the officer's efforts to place him in the police car. The United States District Court for the District of New Jersey held that these disputes precluded summary judgment because the video recording was inconclusive. It explained, as follows:

> *Contrary to Defendants' claims, the videos do not offer a conclusive version of events*. The videos begin with Mr. White on the ground, Officer Platania on Mr. White's back, and Officer Janasiak in the area. One video begins as the officers release the K-9 unit, the other begins after the dog has been restrained. *Neither video reveals anything about how Mr. White wound up on the ground with two officers and a K-9 using force to restrain him*. The videos end with Mr. White on his back, with additional officers arriving on the scene. They therefore do not show what happened after Mr. White was restrained. They do not reveal

15

whether Mr. White resisted the officers' efforts to place him in a police car, whether he sat upright on the curb after the officers handcuffed him, or how he acted when the EMTs placed him in an ambulance.

Even the footage on the videos is not conclusive. It shows the officers restraining Mr. White and the K-9 unit engaging Mr. White. *Mr. White does not appear to be violent, but it is unclear whether he is resisting*. His arm raises at one point, apparently in the dog's jaw, but it is not clear whether the arm is limp. Nothing in the video shows whether Mr. White reached for Officer Platania's weapon.

*Id*. at 302-03 (emphasis added). In sum, the video recordings in the record were incomplete and, thus, inconclusive.

In his petition for leave to amend, Prieto stated that he could not remember what happened on February 1, 2022, because he was under the influence of a controlled substance. His amendment was based on Graber's body camera video footage. In other words, both Prieto and Graber agree that the video footage depicted what actually happened at the time of Prieto's arrest on February 1, 2022. To challenge the grant of summary judgment to Graber, Prieto asserts there are two disputed facts. First, he did not bang on apartment doors when Graber arrived at the scene, contrary to the assertion in the trial court's Pa.R.A.P. 1925(a) opinion and in Graber's motion for summary judgment. Second, Graber made two different statements on whether Prieto rushed towards him before he deployed his taser. However, Prieto does not dispute the assertions in Graber's motion for summary judgment that Prieto was seen on the video footage "yelling, screaming," holding an unidentified object in his hand, running down the apartment complex hallway, and refusing to comply with Graber's commands to stop moving. Graber's Motion for Summary Judgment, ¶¶8-12; R.R. 103-04a. The video footage showed, and Prieto does not dispute, that Graber tased him when he was running away, and that he

continued to resist after the backup officers arrived. This continued resistance prompted the second tasing.

Because Graber's video footage is complete, it had to be considered by the trial court in deciding whether, as a matter of law, Graber used more force than was necessary to apprehend Prieto. *See Graham*, 490 U.S. at 396 (relevant considerations in determining whether police used reasonable force include "whether [the arrestee] is actively resisting arrest or attempting to evade arrest by flight"). It is undisputed that Prieto was resisting arrest. Further, the question of whether police used excessive force is a legal, not factual, question. This Court has explained as follows:

> The material facts alleged in a suit claiming excessive force are for a jury to determine; whether, based on those facts, a police officer's actions were objectively reasonable is a question of law.

*Lucas v. City of Philadelphia* (Pa. Cmwlth., No. 1778 C.D. 2011, filed June 6, 2012) (unreported),[7] slip op. at 7 (citing *Carswell v. Borough of Homestead*, 381 F.3d 235 (3d Cir. 2004)).

We reject Prieto's contention that issues of material fact remain in dispute. The trial court's holding that Graber did not use excessive force in apprehending Prieto fully comports with the law and is consistent with the video recording. Accordingly, we reject Prieto's challenge to the grant of summary judgment to Graber.

## Conclusion

The trial court erred in denying Prieto's petition to amend complaint because the proposed amendment would not alter the cause of action asserted in the

---

[7] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion issued after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

Amended Complaint, which remains a claim in trespass for assault or battery. This, however, is not a reversible error because the proposed amendments "will be futile." *Stempler*, 529 A.2d at 524. Based on the video footage, the accuracy of which is not disputed, the trial court properly found that Graber's use of force to apprehend Prieto was reasonable as a matter of law.

For these reasons, we affirm the trial court's October 21, 2024, orders granting summary judgment to Graber and the other Officers and dismissing Prieto's claims against them with prejudice.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andres Prieto,     :
    Appellant  :
         :
   v.     :  No. 1517 C.D. 2024
         :
Police Officer Daniel Mammula, :
Police Officer Dedos, Police Officer :
Douglas Miller, Police Officer  :
Michael Pezzeca, Police Sgt. Vincent :
Perone, Police Sgt. James Graber, :
and the City of Philadelphia  :

# **O R D E R**

AND NOW, this 2nd day of April, 2026, the orders of the Court of Common Pleas of Philadelphia County, in the above-captioned matter, dated October 21, 2024, granting the Motions for Summary Judgment filed by Officers Mammula, Dedos, Miller, Pezzeca, Perone, and Graber are hereby AFFIRMED.

The Application to Strike filed by Police Sgt. James Graber is DENIED.

_____
MARY HANNAH LEAVITT, President Judge Emerita